UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN MACDONALD, VERONICA H. AGUIRRE, AND BRIAN C. BARBEE, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 3:13-CV-02988-JST<br><br>**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 28 |

In this action for breach of implied warranty, violations of California's Unfair Competition Law, and related claims, Defendant Ford Motor Company moves to dismiss each of Plaintiffs' claims for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

I.  **BACKGROUND**

Plaintiffs Jean MacDonald, Veronica Aguirre, and Brian Barbee bring this action individually and on behalf of a similarly situated class of individuals who purchased or leased 2005–2008 Ford Escape Hybrid, or 2006–2008 Mercury Mariner Hybrid vehicles ("Class Vehicles"). Second Am. Compl. ("SAC"), ECF No. 27 ¶ 1. Plaintiffs allege that the Class Vehicles, equipped with the Motor Electronic Cooling System ("MECS"), contain defective coolant pumps, and that Defendant, Ford Motor Company, knew of the defect and failed to inform consumers. Plaintiffs further allege that the defect caused abrupt loss of power, often at highway speeds, and accordingly presented a safety risk to drivers. Id. ¶ 5.

Plaintiff Jean MacDonald purchased a new 2007 Ford Escape Hybrid on or around March 11, 2007. SAC ¶ 23. MacDonald's vehicle was manufactured, sold, and warranted by Ford. Id.

1    On December 29, 2012, when her odometer read approximately 43,146 miles, MacDonald was
2    driving her Escape Hybrid on a freeway when the "Stop Safely Now" light came on and the
3    vehicle lost power. Id. ¶ 25. MacDonald was able to drive the vehicle at approximately five miles
4    per hour through freeway traffic to the shoulder of the highway. Id. She contacted a Ford
5    dealership that diagnosed the issue over the phone as having to do with the MECS coolant pump.
6    Id. MacDonald was able to restart her car and took it to a Ford dealership. Id. Her repair order
7    states, "FOUND MALFUNCTION WITH THE MOTOR ELECTRONICS COOLING PUMP.
8    Id. NEEDS PUMP REPLACED AND RETESTED." Id. The MECS coolant pump was replaced,
9    at a total cost of $767.58. Id.

10   Plaintiff Veronica Aguirre purchased a new 2007 Ford Escape Hybrid on December 5,
11   2006. Id. ¶ 29. On December 26, 2009, when her odometer read approximately 62,753 miles,
12   Aguirre was driving her Escape Hybrid on a freeway when the "Stop Safely Now" light came on
13   and the vehicle lost power. Id. ¶ 31. Mechanics at the Ford authorized dealership diagnosed the
14   issue as the coolant pump, and replaced it at a total cost of $767.58. Id.

15   On March 15, 2013, when her odometer read approximately 125,962 miles, Aguirre was
16   driving her vehicle when the "Stop Safely Now" light came on and again her car lost power. Id. ¶
17   32. She had the vehicle towed to a Ford dealership where the mechanics diagnosed the issue as
18   the coolant pump, and replaced it at a cost of $754.05. Id.

19   Plaintiff Brian C. Barbee purchased a new 2008 Ford Escape Hybrid on February 11, 2008.
20   Id. ¶ 36. On February 18, 2013, when his odometer read approximately 47,793 miles, Barbee was
21   driving his vehicle when a warning light came on instructing him to pull over and stop his vehicle.
22   Id. ¶ 38. The vehicle then surged forward. Id. Upon inspection, the dealership personnel
23   determined that the vehicle's electronic cooling motor system had failed. Id. The repair cost
24   Barbee $552.83. Id.

25   Following the repairs, Barbee sent a letter to Ford, requesting that Ford cover the costs of
26   the repair and the tow. Id. ¶ 39. Ford denied Barbee's request. Id.

27   Each Plaintiff alleges that a factor in purchasing his or her vehicle was passenger safety.
28   Id. ¶¶ 26, 33, 40. Prior to purchasing their vehicles, Plaintiffs took time and effort to compare the

2

1  Escape Hybrid with other similar and competing vehicles.  Id.  Plaintiffs also reviewed their

2  vehicles' Monroney window stickers[1] or Ford's website prior to purchasing their vehicles.  Id.

3    Plaintiffs allege that had Ford disclosed the MECS coolant pump defect to them prior to

4  the purchase of their vehicles, they would not have purchased them, or would have paid less.  Id.

5  ¶¶ 27, 33, 41.  They further allege that malfunction of MECS is widespread in the Class Vehicles

6  as a result of a design or manufacturing defect, and that this defect was known to Ford at the time

7  of sale.  On those grounds, Plaintiffs assert the following claims against Ford: (1) violation of

8  California's Consumer Legal Remedies Act, Cal. Civil Code §1750, *et seq.*; (2) violation of

9  California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*;.(3) breach of

10 implied warranty pursuant to California's Song-Beverly Consumer Warranty Act, Cal. Civil Code

11 §§ 1792 and 1791.1, *et seq*.; and (4) breach of implied warranty pursuant to the federal Magnuson-

12 Moss Warranty Act pursuant to 15 U.S.C. § 2301.

## II.  LEGAL STANDARD

  In considering a motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

  In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Both in their Second Amended Complaint and in their opposition to this motion, Plaintiffs use the term "Monroney window sticker" without definition.  "*Monroney label* means the label placed on new automobiles with the manufacturer's suggested retail price and other consumer information, as specified at 15 U.S.C. 1231–1233." 49 C.F.R. § 575.301(c)(1).

defendant is liable for the misconduct alleged." Id.

Where a Plaintiff pleads fraud, he must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In addition, the pleading standard may be relaxed as to matters that are exclusively within the opposing party's knowledge. Moore v. Kayport package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).

### III.  ANALYSIS

Ford moves to dismiss each of Plaintiffs' claims for failure to state a claim upon which relief can be granted. The Court will address each claim in turn.

#### A.  Consumer Legal Remedies Act, Cal. Civil Code §1750, *et seq*.

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" Wilson v. Hewlett–Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)). This prohibition bars a representation that "goods . . . have characteristics which they do not have," or that goods are "are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code §§ 1770(a)(5), (7). It likewise bars omission of any material fact relating to those goods. See LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997). A manufacturer has a duty to disclose a defect when it has exclusive knowledge of material facts not known to the plaintiff. Id.

Plaintiffs allege that Ford violated California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §1770(a), by failing to disclose that the coolant pumps were defective. SAC ¶¶

90, 92. They allege that the defect created a safety hazard by causing a sudden loss of forward propulsion, and loss of vehicle control, often at highway speeds. Id. ¶¶ 52–53, 96–98. Plaintiffs further allege that Ford knew that the pumps were defective, was under a duty to disclose the defect to consumers, and as a result of failing to disclose those defects, harmed Plaintiffs. Id. ¶¶ 92–94.

Ford does not dispute that the alleged defect is a material safety hazard, but moves to dismiss on the grounds that Plaintiffs do not sufficiently allege that Ford knew of a defect at the time of sale, and that Plaintiffs fail to allege the nature of Ford's omission or misrepresentation with sufficient particularity. Id.

### 1. Knowledge

To state a claim under the CLRA a plaintiff must show not only that a defect existed at the time of sale, but that the defendant knew of the defect and sold the product nonetheless. Wilson, 668 F. 3d at 1145; Cal. Civ. Code § 1770(a). Ford's motion to dismiss Plaintiffs' CLRA claim rests on its assertion that Plaintiffs have not sufficiently shown Ford's knowledge of a defect at the time of sale.

Plaintiffs allege a number of facts to support their claim that Ford was aware of the coolant pump defect. These include allegations that Ford had access to pre-production testing, pre-release testing data, early consumer complaints made exclusively to Ford, high levels of repair orders and warranty reimbursements, testing conducted in response to complaints, replacement part sales data, and aggregate data from Ford dealers. SAC ¶ 56. Plaintiffs also append a sample of complaints taken from The National Highway Traffic Safety Administration website, GreenHybrid.com, and Edmunds.com regarding the allegedly defective part. Id. ¶ 54. Finally, Plaintiffs cite a 2006 interview with Tom Watson, Ford's Hybrid Electric Vehicle Propulsion System engineering manager, in which he mentions problems with the coolant pump, as well as three internal Technical Service Bulletins ("TSBs") detailing problems that Ford had with the coolant pump, one from 2005 — before the Plaintiffs' purchases — and two others from July and November of 2008, post-dating their purchases. Id. ¶¶ 57−61.

Ford disputes that these factual allegations lend Plaintiffs' complaint the requisite

plausibility to survive a motion to dismiss.

          a.     Technical Service Bulletins

Plaintiffs support their CLRA claim by alleging facts concerning three internal bulletins related to the MECS. Id. ¶¶ 57–61.

Ford notes that the first TSB relates only to the earlier 2005 model Escape Hybrids, and that the two 2008 TSBs were issued after the Plaintiffs' purchases. ECF No. 28 at 14–15. Ford concludes that these timing disparities preclude a finding that Ford had any knowledge of defects before it sold Class Vehicles to Plaintiffs. Id. Further, Ford notes that the July 2008 memo related to vehicles "used in certain commercial applications," and that this distinction likewise precludes a finding that Ford had knowledge of defects in Plaintiffs' cars at the time of purchase. Id.

That Ford is able to identify competing inferences from the same set of facts does not mean that Plaintiffs' claims should be dismissed. The question before the court is merely whether Plaintiffs have pleaded factual matter that, when accepted as true, "state[s] a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. And perhaps most importantly for these purposes, the Plaintiffs' allegations are to be construed in the light most favorable to them. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

One plausible inference that can be drawn from the three TSBs is that Ford was generally aware of problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing the defective part. For instance, the second TSB indicates that Ford was aware of defects in July 2008. That plausibly suggests that it was aware of some of those same defects when Plaintiff Barbee purchased his vehicle five months earlier. That inference is further substantiated by Ford's apparent knowledge of coolant pump problems as early as 2005, the year of the first TSB. SAC ¶ 58. Although the first TSB related only to the 2005 Ford Escape Hybrids, it is plausible that Ford knew of the defect in other model years because Plaintiffs allege the allegedly defective part in their vehicles is the same. TSBs issued after Plaintiffs' purchases also plausibly give rise to the inference that Ford knew of the issue prior to their issuance. Of course, a

6

1   TSB issued long after purchase lends little support to the necessary inference of knowledge, but
2   these TSBS were issued only five and nine months after the last relevant purchase in this case, and
3   less than two years after the first purchase.  The TSBs taken together support the inference that
4   Ford knew of the alleged MECS defect at the time Plaintiffs purchased their vehicles.

           b.  Engineering Manager Interview

6     The statements made by Ford's Hybrid Electric Vehicle Propulsion System engineering
7   manager in a 2006 interview further bolster Plaintiffs' claim.  The manager stated, "[s]everal water
8   pumps blew at the 50,000 mile mark, a situation that has been rectified."  SAC ¶ 59.  Ford
9   contends that the statement indicates that the problem "ha[d] been rectified," and suggests that
10  "water pumps" and "coolant pumps" are different.  But again, Ford attempts to steer the Court
11  toward only one of several plausible inferences that can be drawn from this statement.  Ford urges
12  that a statement made in April 2006 indicating that the water pump problem had been resolved
13  forecloses the possibility that the coolant pump problem that is the subject of this suit was known
14  to Ford when it released its 2006 line.  However, it is also plausible that the problem discussed in
15  the April 2006 interview relates to, or is the same alleged defect that forms the basis of this suit,
16  and that the "situation" had not been rectified.  Viewing the Second Amended Complaint's
17  allegations favorably to the Plaintiffs, the 2008 TSB also undercuts the assertion that problems
18  with the coolant pump had been fully resolved in 2006.  Taken together, these allegations set forth
19  a plausible inference of Ford's knowledge of the defect.

           c.  Consumer Complaints

21    Plaintiffs further support their allegation of Ford's knowledge by showing that consumers
22  complained of the alleged defect prior to the time of Plaintiffs' purchases.  See Falk v. Gen.
23  Motors Corp., 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007).   For example, a complaint filed
24  with the National Highway Traffic Safety Administration ("NHTSA") in March 2006, nine
25  months before the first Plaintiff had purchased a Ford Escape Hybrid, reported that the vehicle was
26  "shutting itself down" and that the dealership told the owner "it was a bad electric water pump and
27  replaced it. (I was later told by the dealer that the water pump that failed was a known problem at
28  Ford . . . .").  SAC ¶ 64.  Another NHTSA complaint filed in May 2007, eight months before the

1 last Plaintiff had purchased his Ford Escape Hybrid, reported similar problems.  Id.  Plaintiffs also
2 reproduce at least five similar complaints posted on a third-party website, talk.edmunds.com,
3 before the first relevant vehicle purchase in this case.  Id.  Similarly, Plaintiffs reproduce at least
4 six similar complaints posted on third-party website greenhybrid.com.  Id.  There are others as
5 well, which fall in between Plaintiffs' purchases, and some of which post-date all of Plaintiffs'
6 purchases.  Plaintiffs allege that their vehicles were equipped with the same defective coolant
7 pumps.  Id. ¶ 66.

8       For correctly notes that "[s]ome courts have expressed doubt that customer complaints *in*
9 *and of themselves* adequately support an inference that a manufacturer was aware of a defect."
10 Wilson, 668 F.3d at 1147 (emphasis added).  Furthermore, undated complaints cannot support an
11 inference of knowledge because the "provide no indication whether the manufacturer was aware
12 of the defect *at the time of sale*."  Id.; see also Baba v. Hewlett-Packard Co., No. 09-cv-05946-RS,
13 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010) (where no dates were posted on online
14 complaints they "shed[] no light on when HP knew of alleged defects").  However, the Wilson
15 decision does not hold, as Ford contends, that "complaints on third-party websites cannot be used
16 to show a defendant's knowledge."  Reply Br., ECF No. 32 at 11.  It merely holds that, by
17 themselves, consumer complaints are insufficient.  Such complaints may help support other
18 evidence of knowledge.  See e.g., Grodzitsky v. Am. Honda Motor Co., Inc., No. 12-cv-1142-
19 SVW, 2013 WL 2631326, at *6 (C.D. Cal. June 12, 2013) (holding allegation that car
20 manufacturer monitored NHSTA database for complaints, and that pre-sale complaints supported
21 plausible inference of knowledge at pleading stage).

22       The Court will consider the allegations concerning consumer complaints together with the
23 other allegations in determining whether Plaintiffs have met their pleading burden.

24         d.    Exclusive Knowledge

25       Plaintiffs allege that Ford had exclusive access to additional sources of information that
26 reveal the coolant pump defect, including pre-production testing, pre-release testing data, early
27 consumer complaints made exclusively to Ford, high levels of repair orders and warranty
28 reimbursements, testing conducted in response to complaints, replacement part sales data, and

aggregate data from Ford dealers.  SAC ¶ 56.

Ford argues that these allegations are conclusory and insufficient to state a claim.

As discussed above, Plaintiffs are required to "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable," and their allegations may not be in the form of "naked assertions devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  However, "the rule may be relaxed as to matters within the opposing party's knowledge."  Moore v. Kayport package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).  See Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993); Zatkin v. Primuth, 551 F. Supp. 39, 42 (S.D. Cal. 1982) ("Where . . . plaintiffs cannot be expected to have personal knowledge of the facts constituting wrongdoing . . . a complaint based on information and belief is sufficient if it includes a statement of the facts upon which the belief is based.").

Courts have addressed nearly identical pleadings and are divided as to whether such allegations are sufficient to state a CLRA claim.  Compare Mui Ho v. Toyota Motor Corp., 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (complaint alleging knowledge based on "pre-release testing data, early consumer complaints about the defect to Defendants' dealers who are their agents for vehicle repairs, dealership repair orders, testing conducted in response to those complaints, and other internal sources" sufficient to support a CLRA claim); with Grodzitsky v. Am. Honda Motor Co., Inc., No. 12-cv-1142-SVW, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) (complaint alleging knowledge based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources" insufficient to support a CLRA claim).

Dispositive in each of Mui Ho and Grodzitsky was whether the plaintiffs provided additional information supporting their allegations.  In Grodzitsky the court had only general allegations before it, whereas in Mui Ho plaintiffs were able to point to TSBs issued by the defendant regarding the allegedly defective part.  Here, as in Mui Ho, Plaintiffs have alleged plausible facts supporting their belief, including the TSBs and the 2006 interview.

The Court finds that Plaintiffs have adequately alleged Ford's knowledge of the defect.

### 2. Failure to Plead Omission with Particularity

Ford moves to dismiss the CLRA claim on the additional ground that Plaintiffs have failed to "describe the 'content of the omission[2] and where the omitted information should or could have been revealed, [and to] provide representative samples of advertisements, offers or other representations that plaintiff relied on to make her [sic] purchase and that failed to include the allegedly omitted information.'" ECF No. 28 at 18 (quoting Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)). The facts of Marolda are dissimilar to those of the instant case. There, the dispute concerned an alleged omission within a particular advertisement, which the plaintiff had failed to produce or adequately describe. Id. at 1001–02. The court noted that "the content of the representation is clearly within plaintiff's knowledge" and accordingly she must "describe the contents of the allegedly false representation in detail . . . or she may simply attach a copy of the offer." Id. at 1001.

"As other courts have recognized, the Marolda requirements are not necessarily appropriate for all cases alleging a fraudulent omission." Overton v. Bird Brain, Inc., No. 11-cv-1054-DOC, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012). Typically, "[a]verments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged," but claims based on an omission "can succeed without the same level of specificity required by a normal fraud claim." Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997); Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). This is because a plaintiff alleging an omission-based fraud will "not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." Baggett at 1267; see also Falk v. General Motors Corporation, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 1987). Because the plaintiffs "[are] alleging a failure to act instead of an affirmative act, the [Plaintiffs] cannot point out the specific moment when the Defendant failed to act." Baggett at 1267.

---

[2] The Court reads Plaintiffs' Complaint to assert a claim based on omission, not misrepresentation. The use of the word "misrepresentation" that Ford points to in paragraphs 22, 93, and 106 of the Second Amended Complaint appear to result from Plaintiffs' use of a form, or rote language, to describe the claim. ("As a result of their reliance on Defendant's omissions and/or misrepresentations. . .").

10

Ford argues that Plaintiffs did not specifically allege "what information about the alleged defect should have been disclosed, who should have disclosed the omitted information . . . when such information should have been disclosed . . . or how the information should have been disclosed." ECF No. 28 at 18. The Court disagrees. Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.

In the aggregate, Plaintiffs have pled sufficient facts to survive a motion to dismiss their CLRA claim. Accordingly, Ford's motion to dismiss the CLRA claim will be denied.

### B. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

Plaintiffs allege that Ford violated the Unfair Competition Law ("UCL") by failing to disclose coolant pump defects and instead intentionally concealing those defects. SAC ¶¶ 109–10. Plaintiffs further allege that Ford's acts misled consumers as to a material component of their purchase — the functionality and safety of their vehicles. Id. ¶¶ 112, 117.

Under the UCL, "unfair competition" means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. When analyzing a UCL claim courts consider each of the three prongs to determine whether a practice is unlawful, unfair, or fraudulent. Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999). A claim that sufficiently pleads any one of these prongs survives a motion to dismiss. Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007); State Farm Fire & Casualty Co. v. Super. Ct., 45 Cal. App. 4th 1093, 1102 (1996) ("Because section 17200's definition is disjunctive, a 'business act or practice' is prohibited if it is 'unfair' or 'unlawful' or 'fraudulent.' ").

Ford moves to dismiss the UCL claim on the grounds that Plaintiffs fail adequately to allege Ford's practices were unlawful, unfair, or fraudulent as required under the UCL. More specifically, Ford contends that (1) because Ford has violated no law, the claim fails under the unlawful prong; (2) because Ford had no knowledge of the alleged defect, the claim fails under the fraud prong; and (3) because Plaintiffs' injury is one that Plaintiffs could have reasonably avoided,

11

is not outweighed by countervailing benefits, and is not substantial, it fails under the unfairness prong.

### 1. Unlawful Prong

"Section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012) (citations omitted). Accordingly, to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation. It is well established that a CLRA violation suffices as the predicate. See, e.g., Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) (UCL unlawful prong dependent upon plaintiff's CLRA claim); People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th 508 (2002) ("[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200.").

Here, Plaintiffs' UCL claim is adequately stated because Plaintiffs have stated a sufficient predicate claim under the CLRA as discussed above.

### 2. Fraudulent Prong

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770(a). Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA, and courts often analyze the two statutes together. See Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003); Paduano, 169 Cal. App. 4th at 1468–73, (analyzing UCL and CLRA claims together); Neu v. Terminix International Inc., 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008) (analyzing UCL and CLRA claims together); Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1124–27 (N.D.Cal.2010) (analyzing UCL and CLRA claims together).

The Court's reasoning above with regard to the CLRA applies to the UCL. Because Plaintiffs have sufficiently alleged Ford's knowledge of a material defect in Class Vehicles, their UCL claim survives a motion to dismiss under the fraudulent prong.

### 3. Unfair Prong

As the California Supreme Court recently noted, "[t]he standard for determining what business acts or practices are "unfair" in consumer actions under the UCL is currently unsettled." Yanting Zhang v. Superior Court, 57 Cal. 4th 364, 380 n. 9 (2013). This state of affairs is best explained by briefly reviewing the decisions that led to this ambiguity.

Early UCL cases held that a business practice was unfair if "the utility of a practice was outweighed by the harm it posed to a victim," and the conduct offended "an established public policy or [was] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886–87 (1999). However, the California Supreme Court rejected the South Bay test, holding that it is "too amorphous" and "provides too little guidance to courts and businesses." Cel-Tech, 20 Cal. 4th at 185. To resolve this problem, it formulated a new test requiring that unfairness "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Id. at 186–87.

However, the Cel-Tech court limited its holding to antitrust cases, id. n.12, but did not provide an alternative test to be used in the consumer context. See Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1402–03 (2006). The uncertainty over whether Cel-Tech should apply in consumer cases in turn led to a split among the Courts of Appeal. Some applied the old balancing test, while others applied a variant of the Cel-Tech test. Compare Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal. App. 4th 700 (2001) (applying balancing test) with Gregory v. Albertson's Inc., 104 Cal. App. 4th 845, 854 (2002) (holding that an unfairness claim must be "tethered to specific constitutional, statutory or regulatory provisions.")

In Camacho, the court suggested a third test in an attempt to harmonize the concerns posed by Cel-Tech with unfairness claims brought in the consumer context. 142 Cal. App. 4th at 1400. The court seized on the portion of Cel-Tech's holding suggesting that courts may "turn for guidance to the jurisprudence arising under section 5 of the Federal Trade Commission Act," and adopted the test set out in section 45(n) of that Act. Id. (Citation and internal quotation marks omitted). Under the Camacho test, unfairness is defined by three factors: (1) the consumer injury

must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not have reasonably avoided. Id.; 15 U.S.C. § 45(n).

This test has since been followed by numerous California appellate courts, and is the test that Ford urges this court to apply. However, the Ninth Circuit expressly disavowed the Camacho approach in Lozano v. AT&T Wireless Servs. Inc., 504 F.3d 718, 736 (9th Cir. 2007). It reasoned that "though the California Supreme Court did reference FTC's section 5 as a source of "guidance," that discussion clearly revolve[d] around anti-competitive conduct, rather than anti-consumer conduct," and the Ninth Circuit accordingly declined "to apply the FTC standard in the absence of a clear holding from the California Supreme Court." Id.

Lozano went on to hold that absent further clarification, a practice may be deemed unfair if either (1) it is tethered to specific constitutional, statutory, or regulatory provision, or (2) its harm to consumers outweighs its utility. Id. ("Because adopting one standard does not necessitate rejection of the other, we hold that, no matter the status of Cel-Tech, the district court did not apply the wrong legal standard by relying on the balancing test from South Bay.").

Plaintiffs' UCL claim states a claim under the unfairness prong of the UCL because it passes muster under either the balancing test or the Cel-Tech "tethering" test. Under the balancing test, Ford's failure to disclose the alleged safety problems with its cooling pumps was without utility, and therefore does not outweigh the harm Plaintiffs suffered as a result of the defective pumps. Under the Cel-Tech test, Plaintiffs' claim succeeds because it is tethered to the CLRA, as discussed above.

Plaintiffs' UCL claim survives Ford's motion to dismiss under all three prongs of the UCL. The Court will therefore deny Ford's motion to dismiss Plaintiffs' UCL claim.

### C.    Song-Beverly Consumer Warranty Act

Plaintiffs allege that Ford breached the implied warranties set out in sections 1792 and 1791.1 of the California Civil Code by knowingly selling vehicles that were not fit for providing reasonably reliable and safe transportation because they contained inherently defective coolant pumps at the time of sale. SAC ¶ 123.

14

Ford moves to dismiss on the grounds that Plaintiffs' claims are time-barred, both because the alleged defects occurred after the coverage period of the implied warranty had ended, and because Plaintiffs filed this suit after the statute of limitations had run.

The Song–Beverly Consumer Warranty Act creates "an implied warranty of merchantability" whereby the seller guarantees that consumer goods meet each of the following conditions: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label. Cal. Civ. Code § 1791.1. The implied warranty shall cover "no less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c).

There appears to be disagreement among California courts as to whether a Song-Beverly claim can succeed if a product defect arises after the one year implied warranty has expired. Compare Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 1304–05 (2009) (concluding that "[i]n the case of a latent defect . . . the warranty of merchantability is breached by the existence of the unseen defect . . . although [the] defect may not be discovered for months or years after a sale.") with Marchante v. Sony Corp. of America, Inc., 801 F. Supp. 2d 1013 (S.D. Cal. 2011) (noting that Mexia would "render meaningless any durational limits on implied warranties" because "[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period . . . . [I]n that vein, Mexia enjoys the limelight as a case contrary to established California case law with respect to the duration of the implied warranty of merchantability") (citations omitted). Without reaching the issue of whether the implied warranty was breached within the one-year period set forth by the Song-Beverly Act, the claim must be dismissed because the applicable statute of limitations has run.

"The Song-Beverly Act does not include its own statute of limitations." Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1305–06 (2009). Instead, "the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by . . . the Uniform Commercial Code: section 2725." Id.; see also Jensen v. BMW of North America, Inc., 35 Cal. App. 4th 112, 132 (1995); Carrau v. Marvin Lumber & Cedar Co., 93 Cal. App. 4th 281, 297

15

(2001). Under Section 2725, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued," and "a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." U. Com. Code § 2725 subds. (1), (2).

Here, Plaintiffs allege that the "coolant pumps suffered from an inherent defect at the time of sale." SAC ¶ 123. Thus, the latest each Plaintiff could have brought a claim was four years after he or she purchased a Class Vehicle. Plaintiff Barbee was the last to buy his vehicle, on February 11, 2008. SAC ¶ 36. The original complaint was filed on June 28, 2013, more than five years after the last purchase, beyond the limitations period.

However, where the warranty "explicitly extends to future performance of the goods, and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725 subd. (2). This exception applies only when "the seller has expressly agreed to warrant its product for a specific and defined period of time." Cardinal Health 301 Inc. v. Tyco Electronics Corp., 169 Cal. App. 4th 116, 130 (2008) (emphasis omitted) (citing Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc., 23 F.3d 1547 (9th Cir. 1994). As courts have noted, the exception is narrow and "does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods." Carrau, 93 Cal. App. 4th at 292 (citation omitted). Instead, "the majority view is that the exception . . . applies only when the seller has expressly agreed to warrant its product *for a specific and defined period of time*." Id.

"Courts have consistently held [that an implied warranty] is not a warranty that 'explicitly extends to future performance of the goods.'" Cardinal Health, 169 Cal. App. 4th at 131 (citations omitted). Because Plaintiffs' cause of action is for breach of an implied warranty, the future performance exception is inapplicable to their claim.

However, Plaintiffs argue that their claim is excepted from the statute of limitations for another reason. They note that two courts have found an additional exception to the general rule imposed by section 2725. In Ehrlich v. BMW of N. Am. LLC, 801 F. Supp. 2d 908, 924–25 (C.D. Cal. 2010), the court tolled the statute of limitations on a Song-Beverly claim for the duration of

an express warranty. That approach was subsequently followed by the court in Falco v. Nissan N. Am. Inc., No. 13-cv-0686-DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ("Following the holding in Ehrlich, Plaintiffs' claims are not time barred because [defendant's] five-year warranty tolled the running of the implied warranty's statute of limitations.").

The Court finds the reasoning in Ehrlich to be unpersuasive, and declines to follow that court's interpretation of section 2725. Ehrlich, and in turn Falco, base their holdings on Krieger v. Nick Alexander Imports, Inc., 234 Cal. App. 3d 205 (1991). But nothing in that opinion supports tolling the statute of limitations on an implied warranty claim for the duration of an express warranty. Rather, the Krieger court held that the applicable statute of limitations for a Song-Beverly claim is four years as provided by section 2725. Id. at 211. While the Krieger decision allows that the date of accrual of the statute of limitations may be tolled for attempted repairs within the one-year implied warranty, nowhere does it suggest that the implied warranty's statute of limitations can be extended for the duration of an express warranty.

Nor does Plaintiffs' claim find support in the language of the California Commercial Code. Section 2725 reads in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal Com. Code § 2725(2). Parsing the language of section 2725, it appears that at all times, the statute refers to the warranty that forms the basis for the cause of action. This is evident from the statute's final reference to "the breach," suggesting that the antecedent "warranty" relates to the claim being asserted and not to an altogether separate claim.

The purpose section of the Comments on the statute provides further clarification. Subsection (2) provides "that the cause of action accrues when the breach occurs," but "states an exception where the warranty extends to future performance." The use of the definite article to

17

describe "the warranty" indicates that it refers to only one warranty. The natural reading of this comment is that the warranty referred to is the same as that which forms the basis for the cause of action.

The interpretation urged by Plaintiffs is out of keeping with the statutory language, and unsupported by California law. The Court finds that the statute of limitations on Plaintiffs' Song-Beverly claim is not tolled by any express warranty, and is limited to four years from the breach of implied warranty.

Here, Plaintiffs bring only an implied warranty claim. As noted, "[c]ourts have consistently held [an implied warranty] is not a warranty that 'explicitly extends to future performance of the goods.'" Cardinal Health, 169 Cal. App. 4th at 131; Cal. Com. Code § 2725 subd. (2). Accordingly, the exception in subdivision 2 of section 2725 does not apply here and the statute of limitations runs from the time that the defect first existed. Plaintiffs allege that the defect was inherent, and existed at the time of sale. SAC ¶ 123. Thus, the latest each Plaintiff could have brought a claim was four years after the car was purchased. Four years from the last purchase would have been February 11, 2012. And even if the statute had accrued on the last day of the implied warranty for the last purchased car, February 11, 2009, the claim would still be barred because the original complaint was not filed until more than four years later on June 28, 2013.

The Court will grant Ford's motion to dismiss the Song-Beverly Act claim.

### D.  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

Plaintiffs allege that Ford breached the implied warranty of merchantability set out by the Song-Beverly Act, and incorporated by the Magnuson-Moss Act, and that the amount in controversy of individual claims exceeds $25,000, and the amount of all claims exceeds $50,000. Compl. ¶¶ 133-134.

Ford moves to dismiss on the grounds that Magnuson-Moss Act claims are contingent on underlying state warranty claims, and Plaintiffs' state warranty claims fail because they are time barred.

Although the Magnuson-Moss Act creates a separate federal cause of action for breach of

1  an implied warranty, courts must look to state law to determine the meaning and scope of the
2  implied warranty.  See 15 U.S.C. § 2301(7).  Here, the Song-Beverly Act controls, and,
3  accordingly, the four-year statute of limitations applies.  As stated above, Plaintiffs' claims were
4  not filed within the statute.

## IV. CONCLUSION

For the foregoing reasons, Ford's motion to dismiss is GRANTED with respect to Plaintiffs' Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Act claims, and DENIED in all other respects.  Plaintiffs' third and fourth causes of action are hereby DISMISSED with leave to amend.  Plaintiffs' amended complaint shall be filed no later than fourteen days from the date of this Order.  Should Plaintiffs choose not to proceed on their warranty claims, they may instead file a notice of submission to the Court's dismissal of those claims within fourteen days from the date of this Order.

**IT IS SO ORDERED**.

Dated: March 31, 2014

_____
JON S. TIGAR
United States District Judge