UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN MACDONALD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No. 13-cv-02988-JST<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS**<br><br>Re: ECF No. 93 |

Before the Court is Plaintiffs Jean MacDonald, Veronica H. Aguirre, and Brian C. Barbee's Motion for Attorneys' Fees, Expenses, and Class Representative Enhancement Awards. The Court will grant the motion in part and deny it in part.

I.  **BACKGROUND**

Plaintiffs filed this putative class action on June 28, 2013 on behalf of individuals who purchased or leased 2005–2008 Ford Escape Hybrid vehicles and/or 2006–2008 Mercury Mariner Hybrid vehicles ("Class Vehicles") against Defendant Ford Motor Company. ECF No. 1. Plaintiffs alleged that the Class Vehicles, equipped with the Motor Electronic Cooling System ("MECS"), contained defective coolant pumps that caused abrupt loss of power, often at highway speeds, and consequently presented a safety risk to drivers. ECF No. 27 ¶ 5. Plaintiffs further alleged that Defendant knew or should have known about the defect and failed to inform consumers. Id. ¶ 15.

After a year of litigation, on September 2, 2014, Ford informed the National Highway Traffic Safety Administration ("NHTSA") of its intent to perform a voluntary safety recall. Under the recall, Ford offered to notify owners of the Class Vehicles of the potential pump failure and instruct them to take the affected vehicle to a dealer. ECF No. 70-6, Ex. E. Ford also offered to

replace all of the defective MECSs free of charge and reimburse out of pocket repairs for MECS defects prior to the date of the safety recall notification. Id.

The recall rendered Plaintiffs' claims in the litigation for affirmative relief moot, but Plaintiffs argued that they were nonetheless entitled to attorneys' fees under a so-called "catalyst theory." Pursuant to the catalyst theory doctrine, the Court may award attorneys fees to plaintiffs under the private attorney general doctrine, even when litigation is not terminated in plaintiffs' favor, provided that defendant changes its behavior substantially because of, and in the manner sought by, the litigation; the lawsuit has merit; and the plaintiff engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation. Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553 (2004).

On November 2, 2015, the Court determined that Plaintiffs' action was a catalyst for Ford's nationwide recall of Class Vehicles equipped with a defective MECS and concluded that Plaintiffs were entitled to fees under California Civil Procedure Code § 1021.5. See ECF No. 90. The Court did not make a determination as to the amount of fees and costs to which Plaintiffs were entitled and ordered the parties to submit briefs on this issue.

On December 2, 2015, Plaintiffs filed the present motion to determine the amount of fees and costs.[1] ECF No. 93. Ford file an opposition on January 15, 2016. ECF No. 99. On February 22, 2016, Plaintiffs filed their second amended reply.[2] ECF No. 104. Plaintiffs seek $876,523 in

---

[1] In support of the motion, Plaintiffs submitted 1,507 chronologically ordered billing entries. See ECF No. 94-2, Zohdy Decl., Ex. 2. Plaintiffs supplemented this with charts that grouped the billing entries by task and showed the subtotal for each attorney or paralegal's hours for each task. ECF No. 103, Ex. A.

[2] Plaintiffs filed their original reply brief on February 5, 2016. ECF No. 100. The brief was 26 pages in length, in violation of Civil Local Rule 7-4(b), which limits reply briefs to 15 pages without leave of court. On February 10, 2016, Plaintiffs filed an amended reply brief, which they represented "contain[ed] no substantive changes from the prior filed Reply [but] complie[d] with the 15-page limit." ECF No. 101 at 6 n.1. Although Plaintiffs' amended reply was 15 pages in length, character and line spacing was condensed such that the amended reply brief fit substantially more than 15 pages' worth of text into 15 pages. The Court ordered Plaintiffs to file an amended brief that complied with the Local Rules and to also include a separate, redlined version of the document. ECF No. 102.

On February 29, 2016, Ford filed its objections to Plaintiffs' reply and reply evidence. ECF No. 106. The Court overrules the objections. The evidence submitted by Plaintiffs on reply was not new, but rather, submitted in direct response to points raised by Ford's opposition.

1  fees, $3,015.65 in costs, and $7,500 in incentive payments for the three named Plaintiffs ($2,500
2  each). Id.

## II. ATTORNEYS' FEES

### A. Legal Standard

Because Plaintiffs asserted claims under California law, see ECF No. 27 ¶¶ 45-48., California law governs the determination of attorneys' fees. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. See Apple Computer, Inc. v. Superior Court, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

The Court uses the "lodestar" method to determine whether Plaintiffs' requested fee is reasonable. Serrano v. Priest, 20 Cal. 3d 25, 48 n.23 (1977). A lodestar figure is based on the careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case. Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 579 (2004) (internal quotation and citation omitted). The lodestar is calculated by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. Ctr. for Biological Diversity v. Cnty. of San Bernardino, 185 Cal. App. 4th 866, 896 (2010). Trial courts must carefully review attorney documentation of hours expended; "padding" in the form of inefficient or duplicative efforts are not subject to compensation. Graham, 34 Cal. 4th at 579.

Although a trial court is not required to include a fee enhancement to the basic lodestar figure, the lodestar may be adjusted upward or downward by positive or negative multiplier based on reasonableness factors including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 154 (2006); see also Ketchum v. Moses, 24 Cal. 4th 1122, 1138 (2001) (upholding the lodestar enhancement predicated on contingency risk). The purpose of such adjustment is to fix a fee at the fair market value for the particular action. Graham, 34 Cal. 4th at 579. In effect, the court determines, retrospectively,

whether the litigation involved a contingent risk or required extraordinary legal skill to justify multiplying the lodestar in order to approximate the fair market rate for such services. Id.

### B. Hours Expended

Plaintiffs submit a lodestar of $587,005.50 based on approximately 1,053.9 hours billed over the course of fourteen months of litigation. See ECF No. 103-1. In addition to the lodestar, Plaintiffs also seek a multiplier of 2.0, excluding Counsel's work on the motions for attorneys' fees. ECF No. 93 at 1. In total, Plaintiffs seek $876,523 in attorneys' fees. ECF No. 104 at 20.

Ford objects to Plaintiffs' fee request as "excessive and unreasonable," and challenges the total hours Plaintiffs' counsel claim to have spent as unreasonable. ECF No. 99 at 1. Specifically, Ford contends that Plaintiffs' counsel: (1) overstaffed the case; (2) seek compensation for solicitation; (3) conducted unnecessary intraoffice meetings; (4) claim an unjustifiable number of hours for the three complaints filed; (5) seek unreasonable fees for merits-related discovery; (6) claim excessive hours for preparation of fees motions and related discovery; (7) seek compensation for unjustifiable expenditures of time; and (8) seek to recover for duplicative time entries, time billed to wrong case, and timed spent on unnecessary motions never filed. ECF No. 99. Ford also requests that the Court disallow or reduce fees for four members of Plaintiffs' counsel: Joshua Valero, Mao Shiokura, Lucas Rogers, and Mark Greenstone. Id. The Court addresses Ford's specific objections to Plaintiffs' request and Plaintiffs' responses in turn.

#### 1. Overstaffing of Counsel

Ford alleges that "[g]iven the simplicity of this case . . . this case could easily have been handled primarily by the lead lawyers identified in the Complaint . . ." and that "inefficiencies resulting from this overstaffing renders Plaintiffs' attorney[s'] fee[s] request unreasonable." ECF No. 99 at 12. Ford grounds its objections by alleging that Plaintiffs' counsel recycled pleadings and other documents from other cases, conducted virtually no discovery on the merits and only engaged in significant activity when briefing Ford's motion to dismiss. Id. at 11–12.

Plaintiffs, relying on Horsford v. Bd. of Trustees, 132 Cal. App. 4th 359, 397 (2005), respond that courts recognize that litigating complex statutory cases often requires a team structure and do not penalize attorneys for working collaboratively. Plaintiffs contend that "Ford's own

4

caption shows four partners from two separate firms representing it" and that given "Ford's legal firepower, Plaintiffs leanly staffed this case." ECF No. 104 at 10–11. Plaintiffs also submitted a chart identifying the attorneys who worked on this matter month-by-month. The chart shows that an average of four attorneys worked on this case in any given month, and that no more than six attorneys ever worked on the case in any particular month. ECF No. 100-1 ¶ 5; ECF No. 100-2, Ex. 11.

The Court finds that Plaintiffs' staffing decisions were reasonable. Not only do Ford's own apparent staffing decisions make Plaintiffs' equivalent decisions reasonable, but Plaintiffs were litigating a putative class action against one of the world's largest automobile manufacturers. The Court will not reduce the lodestar on the basis of this objection.

### 2. Solicitation and Communication with Clients

Ford next argues that Plaintiffs should not be awarded fees for the time Counsel expended soliciting and communicating with prospective clients. ECF No. 99 at 17. Ford alleges "[a]pproximately $60,000 of these fees were incurred before the Complaint was filed; around $37,000 was incurred between the filing of the Complaint and the September 2014 announcement of the recall; and approximately $10,000 was incurred after the recall was announced." Id.

Ford challenges Plaintiffs' these pre-Complaint fees arguing that time sent soliciting clients is not recoverable. Id. Ford also challenges fees Plaintiffs seek for communication with putative class members after the recall was announced because "Counsel knew at that point that no class would ever be certified in this case and vehicle owners would be notified through the recall process." Id. Should the Court award any fees for solicitation, Ford requests that counsel be compensated at $125 per hour. Id.

Plaintiffs disagree with Ford's characterization of Counsel's communication with clients as solicitation. ECF No. 104 at 14. Plaintiffs instead describe this work as "legitimate communications with putative class members" that constitute compensable legal work. Id. at 14–15. Plaintiffs explain that pre-complaint investigation is particularly important in a suit alleging violations under California's Consumers Legal Remedies Act ("CLRA"), and that Counsel spent necessary time investigating the MECS defect. Id. at 15. Plaintiffs also argue that time Counsel

expended on post-recall communications is also compensable "because Plaintiffs must ensure that the Recall actually corrects the problem that Class Members have complained about." Id. at 15–16.

The Court finds that the efforts Counsel expended toward investigating and communicating with class members pre-Complaint and post-recall were reasonable. The Court declines to reduce the lodestar on this basis.

### 3.  Intraoffice Meetings and Communications

Ford criticizes 230 time entries in Counsel's billing records, representing approximately $40,000 in fees, for intraoffice meetings and communication as "grossly excessive." ECF No. 99 at 19. Ford requests the Court either deny fees for this category entirely or reduce the fees by half "[b]ecause Plaintiffs have made no effort to demonstrate that these meetings and communications represent time 'reasonably spent . . .'" Id. Plaintiffs, in turn, allege that given the complexity of this action, the time spent in strategy conferences are reasonable. ECF No. 104 at 16-17.

Both parties cite to Lemmons v. Ace Hardware Corp., No. 12-cv-03936-JST 2015 WL 435462 (N.D. Cal. Feb 1, 2015) in support of their respective arguments. Ford relies on Lemmons for the proposition that the "practice of billing for many short [internal] meetings has been criticized by other judges in this District as having the effect of potentially inflating a fees award." Id. at *3. Plaintiffs stress that although in Lemmons this Court reduced the attorneys' fees award for internal conferences from 15% to approximately 7.5% of the overall billing, the instant case is distinguishable because Lemmons concerned a straightforward individual ADA action. ECF No. 104 at 16–17.

The Court is aware of the authority counseling a reduction in attorneys' fees for excessive intra-office conferences. E.g., Welch v. Metro. Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007); Hernandez v. Grullense, No. 12-CV-03257-WHO, 2014 WL 1724356, at *10 (N.D. Cal. Apr. 30, 2014). The intra-office conferences in this case, however, have not been shown to be excessive. This was not a single-plaintiff ERISA case like Welch or a single-plaintiff ADA case like Hernandez or Lemmons. This was a large, putative class action. In such cases, some number of intra-office conferences are not only to be expected, but will often result in a savings of attorney

time by ensuring that all attorneys on a team are kept apprised of important information about the case as it becomes available. See Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) ("the Court declines to reduce the hours simply because Class Counsel kept each other informed about the case and double-checked each other's work").

Upon review of the billing records, the Court finds that the $40,000 requested by Counsel for intraoffice conferences appears reasonable. Compared to the total requested lodestar of $597,585.50, the $40,000 billed by Counsel represents approximately 7% of the overall billing. The hours Plaintiffs' Counsel expended on intraoffice communication and collaboration do not warrant a reduction of the lodestar.

### 4. Initial, First Amended, and Second Amended Complaints

Ford contests the amount of time Counsel billed for drafting the initial Complaint—"over 80 total hours amounting to over $40,000 worth of fees." ECF No. 99 at 19–20. Alleging that "82 out of the 119 paragraphs of the [initial] Complaint were largely recycled from another case filed by Plaintiffs' Counsel against Ford in 2012 (the "Vargas" case)," and describing Counsel's efforts as duplicative, Ford contends "that a reasonable fee request should be no more than $6,535.00." Id. at 20. Plaintiffs, in turn, submit a redline comparison that highlights the differences between the initial Complaint and the complaint filed by Counsel in Vargas. ECF No. 100-3, Ex. 13.

After reviewing the billing records and the initial Complaint, the Court finds the time expended by Counsel on researching and drafting the initial Complaint was reasonable. The redline comparison highlighting changes between the Vargas complaint and the instant Complaint reveals substantial differences. The hours billed by Plaintiffs on the initial Complaint do not warrant a reduction.

Ford additionally contends that the $4,600 in fees for the almost 10 hours claimed by Counsel for drafting the First Amended Complaint ("FAC") should be disallowed in its entirety. ECF No. 99 at 20–21. Ford alleges that only 16 out of the 133 paragraphs in the FAC were new, and that with the exception of a claim for actual damages under the CLRA, the amendments were unnecessary. Id. at 20. Plaintiffs rebut they devoted considerable time to drafting the FAC to avoid possible dismissal. ECF No. 104 at 17.

After reviewing a copy of the FAC with changes from the initial Complaint highlighted, ECF No. 99-7, Ex. E, the Court finds Plaintiffs' request for 10 hours in fees unreasonable. Aside from adding named Plaintiffs Aguirre and Barbee, the FAC adds very little to justify 10 hours in fees. The Court subtracts 4 hours from the number of hours claimed by Tarek Zohdy in preparing the FAC.

Ford also challenges Plaintiffs' Second Amended Complaint ("SAC"). As with the FAC, Ford submitted a redline copy of the SAC which identifies the changes made from the FAC. See ECF No. 99-8, Ex. F. Ford argues "the changes [between FAC and SAC] were not extensive and cannot possibly justify the fees sought by Plaintiffs." ECF No. 99 at 21. Plaintiffs respond that the hours spend drafting the SAC included compensable work, such as reviewing subsequent Technical Service Bulletins, analyzing consumer complaints, and adding other facts obtained through interviews. ECF No. 104 at 18.

Upon review of the records, the Court concludes that the approximately 30 hours expended drafting the SAC are reasonable. Exhibit F reveals sufficient changes between FAC and SAC to justify the 30 hours Counsel billed.

### 5. Merits-Related Discovery

Ford challenges the $4,000 Plaintiffs request for preparation of the merits-related discovery requests served on Ford. ECF No. 99 at 21. Ford alleges this sum is "grossly excessive, given that the discovery requests served in this case were duplicative of the discovery requests served by the Vargas [p]laintiffs." Id. Plaintiffs respond that although Counsel used similar language for discovery requests in similar cases, Counsel must still decide how to tailor the requests to the specific allegations in the Complaint. ECF No. 104 at 19.

Review of the discovery requests Plaintiffs served on Ford were very similar to the discovery requests Counsel used in Vargas. See ECF No. 99-9, Ex. G. However, Plaintiffs' discovery requests spanned 31 pages and were updated for the instant action. The Court declines to reduce the lodestar on this basis.

Ford also disputes the $14,000 Plaintiffs seek for the preparation of Plaintiffs' responses to Ford's requests for production of documents because Plaintiffs' responses were duplicative of the

discovery responses served by the Vargas plaintiffs. ECF No. 99 at 21. Plaintiffs respond that $14,000 in fees expended to prepare responses for production of documents is not excessive because it involved written responses, communicating with the named Plaintiffs, reviewing documents from each Plaintiff, and ensuring that the requests were appropriately drafted. ECF No. 104 at 19–20.

Upon review, it appears that Plaintiffs' responses to Ford's discovery request were similar to the responses provided by the Vargas plaintiffs. See ECF No. 99-10, Ex. H. Accordingly, the Court will reduce by six the hours billed by Lucas Rogers in drafting and responding to the request for production.

### 6.     Preparation of Fee Motions and Related Discovery

Ford challenges Plaintiffs' efforts to recover fees, for preparing the catalyst fee motion and seeking related discovery, as excessive and unreasonable. Ford requests Plaintiffs be disallowed approximately $60,000 in fees they seek for catalyst-related discovery because Plaintiffs' motion for catalyst fees did not use the documents and testimony Ford provided in response to Plaintiffs' request. ECF No. 99 at 22. Plaintiffs contend they used this discovery and that Counsel reviewed and identified 120 pages of highly relevant documents, which were used in Plaintiffs' motion. ECF No. 104 at 18.

Plaintiffs, citing to Thayer v. Wells Fargo Bank, 92 Cal. App. 4th 819, 839 (2001), assert that "compensation should not strictly be limited to efforts that were demonstrably productive." The Court agrees. "To reward only the pursuit of a successful theory in cases such as this undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely." Id. (citing Seigal v. Merrick, 619 F.2d 160, 164–65 (2d Cir. 1980)). Counsel's catalyst-related discovery was reasonable, and on this basis, a reduction of the lodestar is not warranted.

Ford next challenges the "more than $12,000.00 worth of fees [Plaintiffs] claim to have spent in connection with Ford's catalyst-related discovery requests." ECF No. 99 at 22. Ford claims Plaintiffs refused to provide any discovery in response to Ford's request, and urges the Court that Plaintiffs "should not be compensated for obstructing Ford's ability to evaluate the

evidence upon which Plaintiffs base their instant request . . . ." Id. Plaintiffs do not address this argument in their reply.

Ford's Exhibit K, a letter sent by Plaintiff's counsel in the run-up to the present motion, does seem to confirm Ford's assertion that Plaintiffs refused to provide any discovery in response to Ford's request. See ECF No. 99-13, Ex. K. If that letter reflected a legitimate discovery dispute, however, or if Plaintiffs' position regarding catalyst discovery was unfair, Ford never raised the issue with the Court. It is difficult for the Court conclude in hindsight that Plaintiffs' discovery conduct was unreasonable when Ford failed to bring it to the Court's attention at the time. And the time entries Ford relies on show that Counsel billed reasonably.[3] Accordingly, Ford's challenge does not warrant a reduction of $12,000.

Ford also contests the "more than $46,000 in fees for more than 75 hours Counsel claim to have spent on Plaintiffs' motion for catalyst fees and reply brief" on the basis that the brief was "only 15 pages long, and most of the brief was comprised of a recitation of the relatively uncomplicated procedural history of the litigation." ECF No. 99 at 22. Plaintiffs defend their fee request on the basis that "[t]he length of a document is no gauge of the time needed to prepare it." ECF No. 104 at 18 (citing Children's Hosp. & Med. Ctr. v. Bontá, 97 Cal. App. 4th 740, 783 (2002)). Plaintiffs allege the catalyst fee brief "required extensive briefing on causation and painstaking chronology of the case derived from mountains of data." ECF No. 104 at 18.

Ford's challenge to Plaintiffs' catalyst fee motion on the basis of the brief's length is unpersuasive. The hours expended preparing Plaintiffs' motion for catalyst fees and reply brief appear reasonable.

---

[3] For example, Ford cites to the following entries: No. 1024 "Attention to new intake;" No. 1055 "Draft and revise objections to request for production of documents pertaining to catalyst fee motion;" No. 1056 "Draft and revise objections to interrogatories pertaining to catalyst fee motion;" No. 1083 "Attention to meet and confer from opposing counsel re discovery responses;" No. 1084 "Draft and revise responses to meet and confer letter including review of subject discovery;" No. 1098 "Review and analyze and finalize meet and confer letter and email team re finalizing;" No. 1099 "Review and analyze case law on issue of whether fee statements and information is required to be disclosed;" No. 1100 "Review and revise and finalize meet and confer letter and send to opposing counsel via email;" No. 1114 "Review and analyze initial response to meet and confer letter and discuss internally;" and No. 1115 "Attention to meet and confer email from opposing counsel and confer with team re same." ECF 94-2, Ex. 3.

Ford also requests this Court reduce Plaintiffs fees request for the instant Motion from $40,000 to $15,000. ECF No. 99 at 22–23. Ford reasons that "portions of [this] [M]otion and declaration in support were comprised of materials recycled from other cases." Id. at 23. Plaintiffs respond "[w]hile certain recitations of basic fee principles remain intact from prior motions," most of the motion involved original work. ECF No. 104 at 18. Both parties rely on Ford's Exhibit Q—an attorneys' fees motion filed by Counsel in a previous case with language highlighted that was recycled in the instant case. ECF No. 99-19, Ex. Q.

Having reviewed Exhibit Q, the Court finds that there are sufficient drafting changes to make Plaintiffs' fee request of $40,000 for approximately 66 hours of work reasonable.

### 7. Other Unreasonable Expenditures of Time

Ford requests this Court deny or reduce the $2,412 Plaintiffs seek in connection with the CLRA letters sent in this matter because the letters were merely recycled from previous matters. ECF No. 99 at 23. Plaintiffs reply that "CLRA letters, which are drafted and served before even the complaint is filed, are the first formal documents prepared in a new action, and thus need to be meticulously reviewed." ECF No. 104 at 19.

The CLRA letters Plaintiffs sent Ford were very similar to the CLRA letter Counsel used in the past. See ECF No. 99-5, Ex. C. The Court accordingly reduces the hours Zohdy and Padgett expended hours in drafting and reviewing the CLRA letter by one hour each.

Ford also challenges "more than $7,000" Plaintiffs seek for preparation for and attendance at the 22-minute case management conference ("CMC") held by this Court in May 2014. ECF No. 99 at 23. Ford contends Lurie, the most senior attorney on Plaintiffs' team, was not needed at this routine conference. Id. Plaintiffs argue Laurie's travel to court is compensable because "this district has long granted prevailing parties their full hourly rate for travel time." ECF No. 104 at 20 (quoting Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012)).

In the context of complex litigation of this type, Counsel's request for $7,000 for preparation for and attendance of the CMC is reasonable.

11

### 8. Duplicative Time Entries, Time Billed to the Wrong Case, and Never-Filed Motions

Ford identifies duplicative entries and entries erroneously attributed to the instant case in Plaintiffs' billing records. ECF No. 99 at 24. Plaintiffs have now eliminated these contested entries, describing the entries as clerical mistakes. Plaintiffs have agreed to subtract $10,580 from their requested lodestar. ECF No. 104 at 6 n.1.

Ford challenges $3,654.50 "Counsel claim to have spent *after* the recall was announced on a class certification motion that was not necessary and was never filed." ECF No. 99 at 24 (emphasis original). Ford argues that because "the Recall mooted Plaintiffs' claims[,] . . . spending any time on a motion to certify moot claims is unreasonable." Id. Plaintiffs respond that work Counsel performed in preparation of the motion for class certification is compensable and cite to Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012).

Charlebois is not helpful to Plaintiffs. In that case, the court approved an award of fees for time spent drafting a summary judgment motion that was never filed because the Defendants agreed to a settlement a few days before the summary judgment filing deadline – but after plaintiffs had already begun drafting their motion. Id. At the time the fees were incurred, the dispute between the parties was very much alive. By contrast, here the disputed fees were incurred after Plaintiffs' claims for affirmative relief had become moot. The Court will reduce the hours Zohdy worked by 6 hours to reflect the legal research and writing done in connection with the class certification motion.

### 9. Objections against Specific Counsel

#### a. Joshua Valero

Ford argues that Joshua Valero's fees should be disallowed because his entries were billed in one-hour increments, are duplicative of services performed by other attorneys, and are grossly excessive for the identified tasks. ECF No. 99 at 12.

Plaintiffs allege that Valero's time entries reflect the actual time he expended on tasks because Counsel's attorneys bill in one-tenth of an hour increments. ECF No. 104 at 11–12. Having reviewed the parties' submissions, the Court finds that Valero's entries are generally reasonable. Nevertheless, because most of Valero's entries are in either one or half-hour

increments, the Court deducts 7 hours from Valero's 68.5 claimed hours.  See <u>Alvarado v. FedEx Corp.</u>, No. C 04-0098 SI, 2011 WL 4708133, at *17 (N.D. Cal. Sept. 30, 2011) (court reduced requested fees for billing in quarter-hour increments because use of such billing likely overstated the number of hours actually worked).

### b. Mao Shiokura

Ford challenges fees Plaintiffs seek for Mao Shiokura's work on the basis her entries, like Valero, are billed almost exclusively in one-hour increments, are internally duplicative, are duplicative of work performed by other Counsel's attorneys, and are grossly excessive.  ECF No. 99 at 13.  In response, Plaintiffs allege that many of Shiokura's entries were not in one-hour increments, and her work on investigating claims, drafting the complaint, and conducting evidentiary research was not duplicative.  ECF No. 104 at 12.

Most of Shiokura's efforts, including time expended on researching and organizing online complaints, are reasonable.  However, review of Counsel's billing entries reveals that most of Shiokura's entries were in one or half-hour increments.  The Court deducts 5 hours from Shiokura's 46.1 claimed hours.

### c. Lucas Rogers

Ford similarly challenges Lucas Rogers's billed hours, arguing that Rogers billed primarily in one-hour increments, his work was duplicated by other Counsel, and the time he claims to have spent on tasks is grossly excessive.  ECF No. 99 at 14.  To contest Ford's allegation, Plaintiffs allege that a number of Rogers's time entries were non-one-hour entries, that Rogers's duplicative entries were a product of multiple attorneys reviewing the 9,000 pages of documents produced by Ford, and that because Rogers's duties entailed production of 350 documents responsive to Ford's discovery request, the amount of time Rogers billed to this case is not grossly excessive.  ECF No. 104 at 13.

Reviewing Plaintiffs' billing records, Rogers's entries are mostly in one-hour increments. However, Rogers's entries do not appear to be duplicative or grossly excessive because Plaintiffs reasonably expended time reviewing and producing discovery.  The Court will reduce Rogers's billed hours from 28.8 to 24.8 hours.

#### d. Mark Greenstone

Finally, Ford requests the Court deny fees for Counsel Greenstone either entirely or reduce his billed hours by twenty percent. ECF No. 99 at 17. Describing Greenstone's entries as excessive and duplicative, Ford criticizes Greenstone's involvement in the initial complaint, the SAC, Plaintiffs' opposition to Ford's motion to dismiss, intraoffice meetings, and Greenstone's review and revision of Plaintiffs' interrogatories. Id. at 16–17.

Having already addressed the initial complaint, the SAC, intraoffice meetings, and Plaintiffs' billings relating to discovery above, the Court declines to reduce or deny Greenstone's billed hours.

### C. Hourly Rate

In order to calculate the lodestar, the Court must determine the reasonable hourly rate for the services of Plaintiffs' Counsel. In making this determination, the Court looks to the "prevailing market rate" in the relevant community, taking into consideration "the experience, skill, and reputation of the attorney[s] requesting fees." Heritage Pac. Fin., LLC v. Monroy, 215 Cal. App. 4th 972, 1009 (2013). "Affidavits of plaintiffs' attorney . . . regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." Id. The Court may also "rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." Id.

Here, Plaintiffs requests the following hourly rates: (1) $695 for Jordan Lurie, Robert Friedl, Stephen H. Gamber, and Mark Greenstone (of counsel, senior counsel, senior counsel, and former senior counsel, respectively); (2) $595 for Ryan Wu (senior counsel); (3) $495 for Tarek Zohdy (associate); (4) $445 for Lucas Rogers (former associate); (5) $420 for Mao Shiokura (associate); (6) $395 for Joshua Valero (former associate); and (7) $370 for Cody Padgett (associate). ECF No. 94 at 8.

To support that their rates are reasonable, Counsel discuss other judicially-approved rates in this district. ECF No. 93 at 18 (citing to Moore v. PetSmart, Inc., No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *12 (N.D. Cal. Aug. 4, 2015); Quintana v. Claire's Boutiques, Inc., No.

5:13-cv-00368-PSG (N.D. Cal. Dec. 1, 2015)).  The Court finds that Counsel's requested rates are consistent with rates awarded by courts for attorneys with comparable experience.  See ECF No. 94, Zohdy Decl. ¶¶ 24–28.

The rates requested for Plaintiffs' Counsel are reasonable, and the Court will therefore approve them.

### D.  Lodestar

After the adjustments described above, the Court finds the following table shows reasonable number of hours and hourly rates in this case:

| ATTORNEY | RATE | HOURS | LODESTAR |
|---|---|---|---|
| Jordan Lurie | $695 | 180.2 | $125,239.00 |
| Robert Friedl | $695 | 32.7 | $22,726.50 |
| Stephen H. Gamber | $695 | 98 | $68,110.00 |
| Mark Greenstone | $695 | 63.2 | $43,924.00 |
| Ryan Wu | $595 | 120.9 | $71,935.50 |
| Tarek Zohdy | $495 | 327.8 | $162,261.00 |
| Lucas Rogers | $445 | 16.8 | $7,476.00 |
| Mao Shiokura | $420 | 41.1 | $17,262.00 |
| Joshua Valero | $395 | 61.5 | $24,292.50 |
| Cody Padgett | $370 | 76.6 | $24,342.00 |
| **TOTAL** | | **1020.8** | **$567,569.50** |

### E.  Multiplier

In awarding attorneys' fees, the Court may adjust the lodestar upward or downward based on various factors.  See Ctr. for Biological Diversity, 185 Cal. App. 4th at 899.  Plaintiffs request the Court apply a 2.0 multiplier to the lodestar on Counsel's merit-based work[4] because (1) Counsel took the litigation on a contingency basis; (2) Counsel obtained exceptional results, given that Ford's recall delivered to consumers precisely the relief Plaintiffs sought; and (3) awards in similar cases support the application of a 2.0 multiplier.

The Court concludes that a positive multiplier of 2.0 is appropriate for the "merits" work expended by Counsel.  As Plaintiffs point out, Ford has remedied at least 33,873 defects in customers' automobiles. ECF No. 93 at 10.  Plaintiffs contend that under a conservative valuation

---

[4] Plaintiffs divide their "merits" work from their "fees" work, beginning with the work done on the catalyst fee motion following Ford's announcement of the voluntary recall.  ECF No. 93 at 14.

of $375 per replaced coolant pump, at least $12.7 million in value has been conferred to the class. Id. In light of these results, a multiplier of 2.0 is warranted. See Vizcaino, 290 F.3d at 1051 n.6 (noting that the majority of class action settlements approved had fees multipliers that ranged between 1.5 and 3). The effect of that multiplier is as follows:

| ATTORNEY | RATE | "MERITS" HOURS | "FEES" HOURS | FEES[5] |
|---|---|---|---|---|
| Jordan Lurie | $695 | 24.8 | 155.4 | $142,475.00 |
| Robert Friedl | $695 | 1.2 | 31.5 | $23,560.50 |
| Stephen Gamber | $695 | 98 | 0 | $136,220.00 |
| Mark Greenstone | $695 | 61.4 | 1.8 | $86,597.00 |
| Ryan Wu | $595 | 0 | 120.9 | $71,935.50 |
| Tarek Zohdy | $495 | 151.7 | 176.1 | $237,352.50 |
| Lucas Rogers | $445 | 14.6 | 2.2 | $13,973.00 |
| Mao Shiokura | $420 | 41.1 | 0 | $34,524.00 |
| Joshua Valero | $395 | 61.5 | 0 | $48,585.00 |
| Cody Padgett | $370 | 53.7 | 22.9 | $48,211.00 |
| **TOTAL** | | **510** | **510.8** | **$843,433.50** |

After determining the reasonable number of hours, the reasonable hourly rates, and an appropriate multiplier, the Court finds that a fee award of $843,433.50 is reasonable.

### III. EXPENSES

#### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category to permit a court to assess whether the expenses are reasonable. Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

#### B. Analysis

Counsel request $3,105.65 in costs and provide their expenses totaled by category. See

---

[5] Multiplier of 2.0 applied to the merits-related work and no multiplier applied to the fees-related work.

ECF No. 94, Zohdy Decl. ¶ 39.

Counsel, however, did not provide an itemized list of their expenses by category and failed to support their expenses with receipts. The Court accordingly denies Plaintiffs' request for reimbursement of expenses and costs.

### IV.  INCENTIVE AWARDS

#### A.  Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton, 327 F.3d at 977 (citation and internal quotations and alternations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

#### B.  Analysis

Plaintiffs seek $7,500 in incentive payments ($2,500 for each of the three named Plaintiffs). ECF No. 93 at 30. Plaintiffs argue that class representative payments would compensate their time and effort because the three named Plaintiffs provided documents to and consulted with Counsel regarding their claims, and assisted throughout the litigation. Id. at 31.

Ford disputes the incentive payments because "Plaintiffs cite no cases in which inventive awards were paid to plaintiffs under a catalyst theory, or in which there was no settlement and no class ever certified." ECF No. 99 at 28.

The Court need not determine whether incentive payments are appropriate as a general

matter, because it concludes that they are not merited here even if they are legally allowable. Plaintiffs have submitted no declarations to support their requests, have provided no estimate of the time they claim to have spent on this litigation, do not contend they faced financial or reputational risk in bringing this action, and do not raise other policy considerations justifying an incentive award.

The Court denies Plaintiffs' request for incentive awards.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Enhancement Awards. The Court awards $843,433.50 in attorneys' fees.

Plaintiffs are ordered to serve a proposed form of judgment on Defendant within five court days. Defendants must either sign the proposed judgment, indicating their agreement only as to form, or provide written objections to the form of judgment, within five court days. Within five court days thereafter, Plaintiffs must file either an approved form of judgment, or a proposed form of judgment, a copy of Defendant's objections, and a written response. The objections and response are limited to three pages each.

IT IS SO ORDERED.

Dated: May 31, 2016

JON S. TIGAR
United States District Judge